## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| MONTANA TRUCKS, LLC, | CV 12–23–M–DWM |
| Plaintiff, | |
| vs. | ORDER |
| UD TRUCKS NORTH AMERICA, INC. f/k/a NISSAN DIESEL AMERICA, INC. and UD TRUCKS, CORP. f/k/a NISSAN DIESEL MOTOR CO., LTD, | |
| Defendants. | |

### INTRODUCTION

Presently pending is a Motion for Summary Judgment. Defendant UD Trucks seeks summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on claims raised in Plaintiff Montana Trucks' Amended Complaint. (Doc. 7.) For the reasons set forth below, summary judgment is GRANTED on all counts of the Amended Complaint. After UD Trucks filed their Motion, Plaintiffs timely filed a Second Amended Complaint on May 14, 2013. (*See* docs. 70-71; Fed. R. Civ. P. 15(a)(2).) The Second Amended Complaint is nearly identical to the Amended Complaint, except for the addition of a claim for constructive fraud.

(Doc. 71 at 8.) That claim is not challenged in the Motion now before the Court and is therefore not adjudicated in this Order. However, Plaintiff's surviving constructive fraud claim stands vulnerable to the reasoning set forth in granting summary judgment on these claims now in issue.

## BACKGROUND

Montana Trucks, LLC ("Montana Trucks") and UD Trucks North America, Inc. ("UD Trucks," formerly Nissan Diesel) entered into a Dealer Sales & Service Agreement on December 10, 2003. (Doc. 7 at 2; Doc. 32 Ex. 1.) The Agreement specified that Montana Trucks was to become an authorized seller and distributor of trucks manufactured by UD Trucks and that UD Trucks would provide vehicles that complied with the Federal Motor Vehicle Safety Standards ("the Federal Standards"). (Doc. 71 at 3.) From December 28, 2006 until December 28, 2007, Montana Trucks purchased eight UD3300 model trucks from UD Trucks for distribution in the United States. (Doc. 30 at 10.) Although UD Trucks represented to Montana Trucks that the UD3300 trucks were certified for operation in the United States, the UD3300 trucks were in fact noncompliant with Section 121 of the Federal Standards. Section 121 lists performance, equipment, and dynamometer test requirements for vehicles with air brake systems. (Doc. 71 at 3.) At some point in 2007, UD Trucks recalled the UD3300 model because the trucks

did not satisfy the Federal Standards' air brake system regulations. (Doc. 71 at 4.) The UD3300 trucks had insufficient air tank reserve capacity and brake activation and timing deficiencies that increased the risks of a brake failure and a vehicle crash. (Doc. 71 at 4-5.)

Around the same time (2006) that Montana Trucks began purchasing UD3300 trucks from UD Trucks, another Montana company, Pioneer Drive, LLC ("Pioneer Drive"), entered into a similar sales and distribution agreement with UD Trucks. (*See* Cause No. CV–08–115–M–DWM, doc. 1, ex. A at 2.) Pioneer Drive and Montana Trucks are separate corporate entities, but they have several principals in common. Randy Botsford was the President of Pioneer Drive and a majority owner of Montana Trucks. Randy's brother Terry Botsford was the attorney for Pioneer Drive and had an ownership interest in Montana Trucks. Mark Byington was Pioneer Drive's Chief Financial Officer and he too had an ownership interest in Montana Trucks. (Doc. 30 at 7-8.) UD Trucks apparently made the same representations to Pioneer regarding UD3300 compliance with Section 121 of the Federal Standards that it made to Montana Trucks. (*See id*., doc. 46 at 6.) On July 17, 2008, Pioneer Drive filed suit in Montana state court against Nissan Diesel (now UD Trucks) for, among other things, breach of contract for failing to supply UD3300 trucks that were compliant with the Federal

Standards. Nissan Diesel removed the case to the United States District Court for the District of Montana, Missoula Division, on August 2, 2008. (*See id.*, doc. 1.) In October and November of 2008, Terry Botsford requested and received two reports from an independent company, Link-Radlinski, that found the brakes on the UD3300 trucks did not comply with Section 121 of the Federal Standards. (Doc. 47 at 10-11.) When presented with the evidence of the failed brake tests, Nissan Diesel denied the noncompliance in writing. On February 1, 2010, a Nissan Diesel Japan employee, Kazuaki Sasame, was deposed in the course of the Pioneer Drive litigation. Randy Botsford and Mark Byington attended the deposition. (Doc. 30 at 11.) During the deposition Sasame testified that the compliance certificates that accompanied the UD3300 trucks were false. On April 23, 2010, Nissan Diesel settled with Pioneer Drive. The settlement amount was made confidential, the transcript of the Sasame deposition sealed, and the case dismissed. (Doc. 47 at 13.)

During the pendency of the Pioneer Drive litigation, on January 30, 2009, UD Trucks terminated the Dealer Agreement with Montana Trucks. (Doc. 47 at 11.) On March 24, 2009, Montana Trucks demanded that UD Trucks repurchase two UD3300 trucks, pursuant to Montana Code Annotated § 30–11–702 (Repurchase of inventory items upon cancellation of dealership or distribution

contract). UD Trucks refused in writing on April 17, 2009, ostensibly because the trucks had been modified. (Doc. 30 at 7-8.) Almost three years later, on February 15, 2012, Montana Trucks sued UD Trucks for breach of contract, fraud, and punitive damages.[1] (Doc. 30 at 10-11.) The date of Montana Trucks' suit is two years and two weeks after the Sasame deposition. Both parties maintain that the day of the Sasame deposition is the latest possible date on which Randy and Terry Botsford and Mark Byington could have been made aware of the UD3300's noncompliance with Section 121 of the Federal Standards. (Doc. 47 at 31.)

UD Trucks filed a motion for summary judgment on Montana Trucks' Amended Complaint on February 5, 2013. (Doc. 7.) Specifically, UD Trucks raised a statute of limitations defense to Montana Trucks' claims for fraud and repurchase; argued that a limitation of remedies provision in the contract prohibits Montana Trucks from asserting their breach of contract claim; and argued that the failure of Montana Trucks' fraud claim necessitates a failure of their claim for punitive damages. (Doc. 30 at 8, 12, 16.)

## SUMMARY CONCLUSIONS

Defendant's Motion for Summary Judgment is granted as to all claims in the

---

[1] Punitive damages under Montana Code Annotated § 27–1–221 is not a stand-alone claim but rather a form of damages. However, Montana Trucks pled "Punitive Damages" as a separate cause of action in their original and amended complaints . (Doc. 1 at 7; doc. 7 at 7; doc. 71 at 9.)

Plaintiff's Amended Complaint: breach of contract, fraud, punitive damages, and repurchase of inventory. There is no genuine dispute of material fact regarding the breach of contract claim and the Limitation of Remedies provision entitles the Defendant to judgment as a matter of law. The same is true for the Plaintiff's fraud and repurchase claims: there are no factual disputes (only legal ones), and the respective statutes of limitations entitle the Defendant to judgment as a matter of law. Finally, the punitive damages claim is tied to the fraud claim, so the Defendant is entitled to judgment as a matter of law on damages as well.

## STANDARD

Summary judgment shall be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Rule 56(c) requires a party asserting there is an [sic] genuine factual dispute to show evidence, not mere allegations. In resolving whether a genuine issue exists, the Court 'view[s] the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party.'" *Roaring Lion, LLC v. Nautilus Ins. Co.*, 2011 WL 3955800, at *1 (D. Mont. Sept. 7, 2011) (quoting *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008)) (Molloy, J.). "On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the non-moving

party. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment; factual disputes which are irrelevant or unnecessary to the outcome are not considered." *Rice v. Allstate Ins. Co.*, 2012 WL 1831114, at *1 (D. Mont. May 18, 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 248 (1986)) (Molloy, J.). A district court's decision to grant, *see Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011), partially grant, *see White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007), or deny, *see Tibbetts v. Kulongoski*, 567 F.3d 529, 535 (9th Cir. 2009), a summary judgment motion is reviewed de novo.

A<span style="font-variant:small-caps">NALYSIS</span>

## I.    Summary Judgment is granted on the breach of contract claim.

The Plaintiff's first claim in the is for breach of contract and an attendant loss of profit. The Plaintiff argues that the Defendant failed to supply trucks that complied with Section 121 of the Federal Standards, constituting a breach of the parties' contract. (Doc. 71 at 7.) Consideration must first be given to which state's law should apply and then to whether the Limitation of Remedies provision in the contract prohibits Montana Trucks from even bringing a breach of contract claim.

### A.    Texas law governs the contract.

Section 38 of the Dealer Sales & Service Agreement, signed by both parties

on December 10, 2003, contains a choice-of-law provision: "the parties agree that the law, but not the choice-of-law, of the State of Texas shall govern the construction and enforcement of this agreement." (Doc. 32-1 at 28.)

"To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)). Montana relies on the *Restatement (Second) of Conflict of Laws* § 187(2)(b) (1971) to determine the validity of a choice-of-law provision in a contract. A Montana court applies the law of the state chosen by the parties to govern their contract unless three factors are met: "(1) if, but for the choice-of-law provision, Montana law would apply under § 188 of the Restatement; (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana. *Great American Assur. Co. v. Discover Prop. and Cas. Ins. Co.*, 779 F. Supp. 2d 1158, 1166 (D. Mont. 2011) (quoting *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 400 (Mont. 2008) (Molloy, J.).

Section 188 of the *Restatement* provides that contracts are governed by the law of the state that has the most significant relationship to the transaction. *Id*. at

1165. In this case, Montana has the most significant relationship to the transaction because the Plaintiff is a Montana company that performed its obligations under the contract in Montana and allegedly suffered damages in Montana. Applying Montana law, contracts are governed by the law of the place where the contract is to be performed. Mont. Code Ann. § 28–3–102. In this case, performance was to take place in Montana, so but for the choice-of-law provision, Montana law would have governed the Agreement.

To determine which state has a materially greater interest in the litigation, Montana looks to the *Restatement* § 188 factors: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Tricknor v. Choice Hotels Intern. Inc.*, 265 F.3d 931, 938 (9th Cir. 2001). Although the contract may have been negotiated partly in Texas (the record is not clear) and the Defendant is a Texas corporation, (doc. 71 at 2), the factors overall weigh in favor of Montana law. The contract was to be performed in Montana, the subject matter of the contract was located in Montana, and the Plaintiff was a registered Montana corporation. Montana has a materially greater interest in this litigation than Texas.

The third part of the test is whether application of Texas law would

contravene a fundamental Montana policy. "The Montana Supreme Court has taken a broad view of what constitutes public policy, declaring that '[f]or choice of law purposes, the public policy of a state is simply the rules, as expressed in its legislative enactments and judicial decisions, that it uses to decide controversies.' The Montana Court has also expressed antipathy toward choice of law provisions that might require enforcement of a contractual provision that would be invalid under Montana law." *Tricknor*, 265 F.3d at 938-39 (quoting *Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1015 (Mont. 2000)). The contractual provision at issue in this case is the Limitation of Remedies provision. Montana Trucks relies on the doctrine of unconscionability to challenge the Limitation of Remedies provision. Both Texas and Montana recognize the doctrine of unconscionability and similarly apply it, so it does not appear that application of Texas law would lead to the enforcement of a contractual provision that would be invalid under Montana law.[2] The application of Texas law accordingly does not contravene the

_____

[2] Like Texas, Montana has codified the Uniform Commercial Code. Montana Code Annotated § 30–2–719 allows for contractual limitation of remedies and a court may refuse to enforce a contract if it is found to be unconscionable. Mont Code Ann. § 30–2–302. Montana law requires both substantive and procedural unconscionability. "Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Iwen v. U.S. West District*, 977 P.2d 989, 995 (Mont. 2001) (quoting *Leibrand v. Natl. Farmers Union Prop. & Cas. Co.*, 898 P.2d 1220, 1227 (Mont. 1995)). In rejecting a plaintiff's argument that a contract was unconscionable because "a more oppressive lease is hard to imagine," the Montana Supreme Court noted that "[a]lthough courts have readily applied the doctrine of unconscionability to contracts between consumers and skilled businessmen, they are reluctant to

fundamental public policy of the State of Montana.

Since only two of the three parts of the *Restatement* § 187(2)(b) conjunctive test are met, the parties' choice-of-law provision will be enforced and Texas law is applied to the breach of contract claim. Notably, both parties eventually agreed that Texas law applies to the contract claims in this case. (*See* doc. 47 at 15; doc. 56 at 12.)

**B.      The Limitation of Remedies provision in the Agreement prevents Montana Trucks from asserting its claim for consequential damages for breach of contract.**

The Limitation of Liability and Remedy provision states, in relevant part:

> These limitations and modifications are a conscious allocation of risk by and between Company and Dealer and the damages, remedies, and liabilities expressed herein or elsewhere in this Agreement are the only damages, remedies or liabilities contemplated by Dealer and Company. All other loss or damage which may be suffered or incurred by Dealer are hereby expressly assumed by Dealer. This limitation of liability and remedy applies to any and all theories of action or causes of action or theories of damage which may be had or brought by Dealer, including but not limited to, actions based upon contract, breach of warranty, negligence or strict liability. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, NO CONSEQUENTIAL DAMAGES, INCIDENTAL DAMAGES, OR OTHER INDIRECT OR SPECIAL DAMAGE OR LOSS, SUCH AS, BUT NOT LIMITED TO, LOSS

---

rewrite the terms of a contract between businessmen themselves . . . . When, as here, all provisions were agreed to by businessmen, none of the surrounding circumstances suggest oppression of appellants' freedom to select another lessor, and nothing on the record suggests disparity of bargaining power, the lease cannot be considered unconscionable." *All-States Leasing Co. v. Top Hat Lounge, Inc.*, 649 P.2d 1250, 1252-53 (Mont. 1982).

OF PROFITS, . . . WILL BE RECOVERABLE BY EITHER
COMPANY OR DEALER FOR BREACH OF THIS AGREEMENT
OR ANY PART OF THIS AGREEMENT, OR FOR BREACH OF
ANY DUTY OR OBLIGATION ARISING OUT OF THIS
AGREEMENT OR RELATED TO UD PRODUCTS, WHETHER
SUCH DUTY OR OBLIGATION BE CONTRACTUAL IN
NATURE OR OTHERWISE. Except insofar as such liabilities and
remedies are excluded or limited or modified in this Paragraph or
elsewhere in this Agreement, Dealer and Company shall have
available to them with respect to the sale and purchase of UD
Products the remedies and shall undertake the liabilities and duties
provided in the Uniform Commercial Code as enacted into law as
validly in force in the State of Texas on the date of the sale of the UD
Product.

(Doc. 32-1 at 27.)

In its Second Amended Complaint, Montana Trucks claims that lost profits

are the damages it suffered from the Defendant's breach of contract. (Doc. 71 at

7.) Not until the Plaintiff's Response Brief to the Defendant's Motion for

Summary Judgment did Montana Trucks assert that it suffered additional damages

due to the Defendant's breach: it continued to acquire operating loans based on

Defendant's representations that its products were compliant with Section 121 of

the Federal Standards. (Doc. 47 at 20.) The Defendant moved for summary

judgment on "contract damages," (doc. 56 at 14), so the analysis here is limited to

lost profits damages because they are the only damages claimed in the operative

Complaint. Lost profits are consequential damages. Tex. Bus. & Com. Code Ann.

§ 2.715. The Limitation of Remedies provision prohibits both parties from seeking recovery of consequential damages, including lost profits. (Doc. 32-1 at 27.)

The Plaintiff argues that "[a]lthough the plain language of the Contract indeed attempts to limit Montana Trucks' remedies to exclude consequential damages, the limitation provision is unconscionable under Texas law." (Doc. 47 at 21.) Texas law provides that, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." Tex. Bus. & Comm. Code Ann. § 2.719. Texas law requires a showing of both substantive and procedural unconscionability. *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. App.–Texarkana 1975). Substantive unconscionability concerns the fairness and reasonableness of the terms of the contract, whereas procedural unconscionability concerns the circumstance surrounding the formation of the contract. *Id*. "One Texas court declared that [unconscionability] results when 'no man in his senses and not under a delusion would enter into and . . . no honest and fair person would accept' a contract on such terms." *Id*. (quoting *Blount v. Westinghouse Credit Corp.*, 432 S.W.2d 549, 554 (Tex. App.–Dallas 1968)).

In *Lindemann v. Eli Lilly and Company*, the Lindemanns argued that they were offered a nonnegotiable contract with an exclusion of consequential economic damages clause and that their inability to negotiate constituted procedural unconscionability. 816 F.2d 199, 203-04 (5th Cir. 1987). The Fifth Circuit Court of Appeals says "as the commentary to the UCC itself states, the principle of unconscionability is one of preventing oppression and unfair surprise, not the disturbance of allocation of risks because of superior bargaining power." *Id*. at 204 (citing Tex. Bus. & Comm. Code Ann. § 2.302, cmt. 1). In fact, the Fifth Circuit could find "no Texas case holding unconscionable a contract clause excluding consequential economic damages on the sale of a commercial product." *Id.* at 204.

Here, Montana Trucks tries to bolster its claim of procedural unconscionability by noting that it was not allowed to make any revisions to the contract, despite its requests to do so. (Doc. 47 at 25.) On the other hand there is nothing in the record showing that the Plaintiff was oppressed or unfairly surprised by the inclusion of the Limitation of Remedies provision. This case is analogous to the Lindemanns's case: the plaintiff in both cases was unable to negotiate the terms of the contract, but the disputed term (exclusion of consequential economic damages) was a term that merely allocated risks.

Additionally, both the Lindemanns and Montana Trucks were aware of the inclusion of the term at the time of contracting, which means that the Plaintiff in this case was not unfairly surprised. The Court in *Lindemann* found no procedural unconscionability, even though it acknowledged that one party had superior bargaining power. 816 F.2d at 204. The same result rings true in this matter.

Montana Trucks also insists that the contract was substantively unconscionable because it limited the Plaintiff's direct and consequential damages while only limiting the Defendant's consequential damages. (Doc. 47 at 24.) Since the Plaintiff only pled consequential damages and not direct damages, the parties' briefs addressed the contract's limitation of consequential damages. The consequential damages clause of the Limitation of Remedies provision is not substantively unconscionable because it applies equally to both parties: "No consequential damages . . . will be recoverable by either Company or Dealer." (Doc. 32-1 at 27.)

Construing the facts in the light most favorable to the Plaintiff, no reasonable jury could find that the Agreement at issue is either procedurally or substantively unconscionable. There is no genuine dispute of material fact. As a matter of law, the Agreement is valid and enforceable under Texas law. The Limitation of Remedies provision prohibits Montana Trucks from asserting a

claim against UD Trucks for loss of profits due to a breach of contract and UD Trucks is entitled to judgment as a matter of law. The Motion for Summary Judgment on the breach of contract claim is granted.

## II. Defendant is entitled to Summary Judgment on the fraud claim.

Montana Trucks claims in its Second Amended Complaint that UD Trucks shipped the UD3300 trucks to the United States with certificates of compliance with Federal Standards and that UD Trucks knew at the time of shipment that the certificates were false. (Doc. 71 at 7-8.) The further insist that compliance with the Federal Standards was material to its agreement with UD Trucks; that it relied on the representations made by UD Trucks; that UD Trucks intended that Montana Trucks would rely on its representations; that Montana Trucks was unaware of the falsity of the certificates; and that the false representations were the direct and proximate cause of Montana Trucks' damages. (Doc. 71 at 8.) While Plaintiff does not cite a particular statute in its Second Amended Complaint, its use of language like "representations were false," "reckless disregard for the truth," and "relied on the representations," suggest that its allegation of fraud is taken from Montana Code Annotated § 27–1–221. (*See* doc. 71 at 7-8.) "A defendant is guilty of actual fraud if the defendant: (a) makes a representation with knowledge of its falsity; or (b) conceals a material fact with the purpose of depriving the plaintiff of property

or legal rights or otherwise causing injury." Mont. Code Ann. § 21–1–221(3). But "[a]ctual fraud exists only when the plaintiff has a right to rely upon the representation of the defendant and suffers injury as a result of that reliance." Mont. Code Ann. § 21–1–221(4). Fraud has its own statute of limitations. A cause of action for fraud must be commenced within two years of the fraud, but the claim does not accrue until "the discovery by the aggrieved party of the facts constituting fraud." Mont. Code Ann. § 27–2–203. "A claim or cause of action accrues when all elements of the claim or cause of action exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court . . . is authorized to accept jurisdiction of the action." Mont. Code Ann. § 27–2–102(1)(a).

### A. The fraud claim is not subject to the choice-of-law provision in the contract.

The choice-of-law provision in the Dealer Sales & Service Agreement specifies that Texas law is to govern the construction and enforcement of the Agreement. (Doc. 32-1 at 28.) The choice-of-law provision applies to any contract-based claim, but a separate analysis is required to determine whether the choice-of-law provision governs the tort claim of fraud. "Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are

decided according to the law of the forum state." *Sutter Home Winery, Inc. v.
Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (citing *Consol. Data
Terminals v. Applied Digital Data Sys.*, 708 F.2d 385, 390 n. 3 (9th Cir. 1983)).

The exception to this general rule arises when the choice-of-law provision is
sufficiently broad so that it encompass all possible claims between the parties to
the contract.[3] In that case, the choice-of-law provision references only the
"agreement" and it likely would be read narrowly by the Ninth Circuit to exclude
noncontractual claims. *See e.g. Narayan v. EGL, Inc.*, 616 F.3d 895, 898-99 (9th
Cir. 2010) (holding that a contractual choice-of-law provision does not apply to all
of the plaintiff's claims because "[w]hile the contracts will likely be used as
evidence to prove or disprove the statutory claims, the claims do not arise out of
the contract, involve the interpretation of any contract terms, or otherwise require
there to be a contract."). Thus, the choice-of-law provision in the Agreement does
not govern the Plaintiff's fraud claim. Instead, the claim is governed by the law of
the forum state, Montana.

### B.   The fraud claim is barred by the statute of limitations.

Montana law provides that claims of fraud have a two-year statute of

---

[3] An Eleventh Circuit case, *Green Leaf Nursery v. E. I. DuPont De Nemours and Co.*, gives
several examples of choice-of-law provisions that are *not* broadly-worded. Those provisions are
quite similar to the wording of the Agreement at issue here. 341 F.3d 1292, 1300 (11th Cir.
2003). (*See* doc. 32-1 at 28.)

limitations. Mont. Code Ann. § 27–2–203. Randy Botsford and Mark Byington both attended the Sasame deposition on February 1, 2010, during which Mr. Sasame admitted that the compliance certificates accompanying the UD3300 trucks were false. (Doc. 31 at 6.) In the briefing on this Motion the parties mentioned other dates as possible dates on which Randy and Terry Botsford and Mark Byington learned of UD Truck's false representations, but February 1, 2010 is the agreed-upon latest date by which they would have learned of the falsity of the trucks' Federal Standards Section 121 compliance certificates. (Doc. 30 at 14.) February 1, 2010, then, is the latest possible day that Montana Trucks became aware of its claimed cause of action for fraud. Yet it did not file this Complaint until February 15, 2012, two years and two weeks after the purported fraud claim accrued. The statute of limitations therefore bars Montana Trucks' fraud claim. However, Montana Trucks argues that this Court should look to the doctrine of fraudulent concealment to find that the statute of limitations on its fraud claim was tolled by the Defendant's behavior. (Doc. 47 at 27.)

The Montana Supreme Court holds "that the statute of limitations for an action based on fraud begins when the fraud occurs unless the facts which form the basis for the allegation are, by their nature, concealed. [It] also conclude[d] that even after acts which form the basis for an allegation of fraud are discovered,

the statute may be tolled if the defendant takes affirmative action to prevent the injured party from discovering that he or she has been injured." *Cartwright v. Eq. Life Assurance Socy. of U.S.*, 914 P.2d 976, 985 (Mont. 1996). The party asserting fraud "must show that the acts of fraud were committed under such circumstances that [it] would not be presumed to have knowledge of them, it being the rule that if [it] has 'notice or information of circumstances which would put [it] on inquiry which if followed would lead to knowledge, or that the facts were presumptively within [its] knowledge, [it] will be deemed to have actual knowledge of the facts.'" *Id.* (quoting *Mobley v. Hall*, 657 P.2d 604, 607 (Mont. 1983)).

By no later than February 1, 2010, Randy Botsford, the majority member of Montana Trucks, LLC, had actual knowledge of UD Trucks' fraud. Even so, Plaintiff claims that Mr. Botsford's knowledge of the Sasame deposition cannot be imputed to Montana Trucks because Mr. Botsford (the agent) was subject to a confidential Protective Order in the Pioneer Drive litigation and could not share this information with Montana Trucks (the principal).[4] (Doc. 47 at 31.) However, the Defendant counters that at all relevant times, Randy Botsford was a majority member of the Montana Trucks LLC, holding a 75% share, and could have committed the company to action on his own vote. (Doc. 56 at 7.) Since Mr.

---

[4] Plaintiff never provides an alternative, later date, on which it *did* learn of Defendant's fraud.

Botsford was present at the Sasame deposition and was a majority owner of Montana Trucks, the Plaintiff's principal-agent analogy falls short. The argument based on the analogy depends on the assumption that the principal and the agent are two different people. That is not the case here.

On January 23, 2013, Montana Trucks filed a motion in this Court to stay the Protective Order in the Pioneer Drive litigation in order to give Montana Trucks access to documents filed in that case under seal. (Doc. 57.) In its brief in support of the motion, Montana Trucks argued that the Protective Order covered "the confidential settlement agreement and the discovery materials and depositions in the Pioneer litigation relating to the braking system and when Defendant knew or should have known about the brake issue" and that "Montana Trucks' access to this information is paramount to pursuing this action." (Doc. 28 at 8-9.) I denied the Motion to Stay the Protective Order but made Montana Trucks a party to the Protective Order so that it could access the necessary documents. (Doc. 43.) The knowledge that Mr. Botsford acquired at the Sasame deposition can be imputed to the same Mr. Botsford that is a majority member of Montana Trucks because Mr. Botsford did in fact use that knowledge to the advantage of Montana Trucks in this litigation by requesting access to the Pioneer Drive documents. Montana Trucks only has access to the Sasame deposition and other key documents because

it knew to ask for them.

Randy Botsford had actual knowledge of the Defendant's fraud on February 1, 2010 and because he held a majority membership interest in Montana Trucks, LLC, the Defendant's fraud was presumptively within Montana Truck's knowledge on the same day. Consequently, the statute of limitations for fraud ran on February 1, 2012 and because the Plaintiff did not file its fraud claim until February 15, 2012, its claim is barred. The Defendant's Motion for Summary Judgment on the issue of actual fraud is granted.

## III.    The Motion for Summary Judgment on the punitive damages claim is well taken.

Punitive damages is not a stand-alone cause of action. It is a type of damages available to a party who has been awarded compensatory damages. Mont. Code Ann. § 27–1–220. Punitive damages serve as punishment for a defendant who has been found guilty of actual fraud or actual malice. Mont. Code Ann. § 27–1–221(1). Punitive damages may not be recovered for breach of contract. Mont. Code Ann. § 27–1–220(2)(a)(ii).

The Plaintiff's two substantive claims in its Amended Complaint are breach of contract and fraud. Punitive damages cannot be awarded for the breach of contract claim and can only be awarded for the fraud claim if the Defendant is

found guilty of actual fraud. Montana Trucks is barred by the statute of limitations from raising its fraud claim against UD Trucks, so it cannot prove actual fraud. As a matter of law, Montana Trucks has no grounds on which to assert its request for punitive damages. Defendant's Motion for Summary Judgment on the issue of punitive damages is granted.

## IV. Defendant's Motion for Summary Judgment on the repurchase claim is well taken.

The Plaintiff incorporated into its breach of contract claim a claim for repurchase of its inventory by Defendants, pursuant to Montana Code Annotated § 30–11–702. (Doc. 71 at 7.) This statute provides that,

> (1) If a retailer enters into a written dealership contract and either the wholesaler, manufacturer, distributor, or retailer cancels the contract, such wholesaler, manufacturer, or distributor shall, at the retailer's request, pay to the retailer, or credit to the retailer's account if the retailer has outstanding any sums owing the wholesaler, manufacturer, or distributor, an amount equal to: (a) 100% of the net cost of all new, unused, undamaged, and complete inventory items held by the dealer at the time of cancellation, plus cost of freight to return the inventory; and (b) 100% of the current net price of each repair part carried on the most recent price list or catalog or the last catalog or price list in which the repair part was listed as provided by the manufacturer or distributor and held by the dealer at the time of cancellation, plus cost of freight to return the repair parts.

Mont. Code Ann. § 30–11–702(1).

The statutory right of repurchase is supplemental to any agreement between the retailer and manufacturer, Mont. Code Ann. § 30–11–713(1)(a), and the retailer may elect to pursue either contract remedies or the statutory repurchase remedy, Mont. Code Ann. § 30–11–713(2). The parties agree that Montana Trucks has no contractual basis for its repurchase claim because the Agreement allows but does not require UD Trucks to repurchase the UD3300 trucks and repair parts. (Doc. 56 at 3; Doc. 32-1 at 24.) The Plaintiff's repurchase claim, then, is not subject to the parties' contractual choice-of-law provision, but rather to Montana law.

Montana has a two year statute of limitations for claims arising out of statutory liability: "Within 2 years is the period prescribed for the commencement of an action upon: . . . a liability created by statute . . . ." Mont. Code Ann. § 27–2–211(1)(c). "A 'liability created by statute' is one which 'establishes a new rule of private right unknown to the common law.' Put another way, it is a 'liability which would not exist but for the statute.'" *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 440 (Mont. 2003) (quoting *Royal Ins. Co. v. Roadarmel*, 11 P.3d 105, 108 (Mont. 2000)). The retailer's right of repurchase of inventory imposes just such a liability on the wholesaler, manufacturer, or distributor. Mont. Code Ann. § 30–11–702(1). The Agreement here does not give Montana Trucks

the right to have its inventory repurchased and it does not impose a repurchase obligation on UD Trucks. (Doc. 32-1 at 24.) Since Montana Trucks' repurchase claim is not based on its contract with UD Trucks but rather on the Montana statute, the claim is subject to the two-year statute of limitations on liabilities imposed by statute.

UD Trucks terminated the Dealer Agreement with Montana Trucks on January 30, 2009. (Doc. 47 at 11.) On March 24, 2009, Montana Trucks demanded that UD Trucks repurchase two UD3300 trucks. UD Trucks refused in writing on April 17, 2009, ostensibly because the trucks had been modified. (Doc. 30 at 7-8.) April 17, 2011, two years after Montana Trucks had cause to bring a claim against UD Trucks for repurchase of its inventory, is the day the statute of limitations on the repurchase claim ran. Montana Trucks did not file its original Complaint until February 15, 2012. (Doc. 1.) Accordingly, Montana Trucks is barred from asserting its statutory repurchase claim. Defendant's Motion for Summary Judgment on this issue is granted.

**V.    Plaintiff's constructive fraud claim in the Second Amended Complaint is vulnerable.**

UD Trucks moved for summary judgment on Montana Trucks' Amended Complaint on February 5, 2013. (Doc. 29.) On May 15, 2013, while the Motion for

Summary Judgment was pending, Montana Trucks filed a Second Amended

Complaint. (Doc. 71.) The Second Amended Complaint contained a new claim for

constructive fraud, pursuant to Montana Code Annotated § 28–2–406. (Doc. 71 at

8.)[5] As a result, UD Trucks did not address the constructive fraud claim in its

Motion for Summary Judgment, so the claim is not ripe for decision.

> "Constructive fraud consists of: (1) any breach of duty
> that, without an actually fraudulent intent, gains an
> advantage to the person in fault or anyone claiming
> under the person in fault by misleading another person to
> that person's prejudice or to the prejudice of anyone
> claiming under that person; or (2) any act or omission
> that the law especially declares to be fraudulent, without
> respect to actual fraud."

Mont. Code Ann. § 28–2–406. In a recent unreported case, I held that

"[c]onstructive fraud is essentially actual fraud without the element of intent and

has similar elements as negligent misrepresentation." *Hayes v. AMCO Ins. Co.*,

2012 WL 5354553, at *4 (D. Mont. Oct. 29, 2012) (Molloy, J.). Fraud can be

actual or constructive, Mont. Code Ann. § 28–2–404, but both kinds are subject to

a two year statute of limitations, Mont. Code Ann. § 27–2–203. If the statute of

limitations bars Montana Trucks' fraud claim, the same statute also bars their

constructive fraud claim.

---

[5] The complaint purported to raise the constructive fraud claim under Montana Code Annotated
§ 28–2–402, but the section number must have been a typographical error because § 402 deals
with duress, while § 406 deals with constructive fraud.

There is no genuine dispute of material fact regarding the breach of contract claim and the Limitation of Remedies provision entitles the Defendant UD Trucks North America to judgment as a matter of law. The same is true for the Plaintiff's fraud and repurchase claims: there are no factual disputes (only legal ones), and the respective statutes of limitations entitle Defendant UD Trucks North America to judgment as a matter of law. Finally, the punitive damages claim is tied to the fraud claim, so Defendant UD Trucks North America is entitled to judgment as a matter of law on damages as well.

Therefore, IT IS ORDERED that Defendant UD Trucks North America's Motion for Summary Judgment (doc. 29) is GRANTED IN ITS ENTIRETY. The only claim remaining as to UD Trucks North America is Plaintiff's constructive fraud claim raised in the Second Amended Complaint.

The Clerk is directed to notify the parties of the entry of this order and to enter judgment in favor of the Defendant UD Trucks North America on all claims but constructive fraud, in accordance with this order.

IT IS FURTHER ORDERED that, having been given notice the sufficiency of their constructive fraud claim is in issue, Plaintiff shall prepare and file a brief of no more than five pages no later than August 26, 2013, demonstrating cause for

continuing to litigate the constructive fraud claim. The reasoning set forth in this Order as to Plaintiff's claim of actual fraud applies with equal force to the new constructive fraud claim raised in the Second Amended Complaint. Plaintiff must distinguish the applicability of the statute of limitations to its constructive fraud claim as a matter of law or present a unique issue of material fact as to that claim, or summary judgment will be granted on the constructive fraud claim *sua sponte* pursuant to Federal Rule of Civil Procedure 56(f)(3).

DATED this 12th day of August, 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT