IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED

DEC 20 2016

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| MONTANA TRUCKS LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UD TRUCKS NORTH AMERICA INC, f/k/a NISSAN DIESEL AMERICA INC., and UD TRUCKS CORP., f/k/a NISSAN DIESEL MOTOR CO., LTD.,<br><br>Defendants. | CV 12–23–M–DWM<br><br>ORDER |

Defendant UD Trucks Corp. f/k/a Nissan Diesel Motor Co., Ltd ("UD Japan") seeks to dismiss the Second Amended Complaint (Doc. 71) on the grounds that Plaintiff Montana Trucks LLC's ("Montana Trucks") claims lack personal jurisdiction, or, in the alternative, fail to state a claim. (Doc. 105). That motion is granted. Montana Trucks fails to show that UD America was the agent or alter ego of UD Japan and that the exercise of personal jurisdiction over UD Japan directly is appropriate.

**FACTUAL BACKGROUND**

This case arises from a contract dispute between Montana Trucks and UD Trucks North America, Inc., f/k/a Nissan Diesel America Inc. ("UD America").

1

(Doc. 118.) In 2003, UD America and Montana Trucks entered into a dealer agreement ("the Contract") in which UD America agreed to supply UD3300 model trucks to Montana Trucks. (*Id.*) In 2008, an independent brake testing company discovered that the brakes in two vehicles did not comply with Federal Motor Vehicle Safety Standard ("FVMSS") 121, but UD America denied that the brakes were non-compliant. (*Id.* at 3.) In 2009, during the pendency of another lawsuit, UD America terminated the Contract with Montana Trucks and refused to repurchase the faulty vehicles. (Doc. 106 at 4.) On February 1, 2010, the President of UD America testified that the compliance certificates that accompanied the UD3300 trucks were false. (Doc. 81 at 4.) Both parties maintain that this date is the last possible date that the claims in the Second Amended Complaint, (Doc. 71), could have arisen. (Doc 81. at 5.)

UD Japan manufactures trucks, engines, and vehicle components in Japan. (Doc 106 at 2.) Its facilities are located in Japan, with its headquarters in Ageo, Japan. (*Id.*) It has no business operations in Montana, is not registered to do business with the Montana Secretary of State, does not own or rent any real property in Montana, has no employees working in Montana, and does not place advertising in media outlets or have a telephone listing in Montana. (*Id.* at 2-3.)

At the time of its business dealings with Montana Trucks, UD America was the product of a joint venture between UD Japan, Marubeni America Corporation,

and Marubeni Co. Ltc. (Doc 118 at 4.) Under the joint venture agreement, UD Japan controlled the board of directors by appointing a majority of its members and appointed the president of UD America. (*Id.*) In June 2008, the joint venture was dissolved and UD Japan bought out the Marubeni interests. (*Id.*) Currently, UD America is a wholly-owned subsidiary of UD Japan. (*Id.*) At all times relevant to the Second Amended Complaint, the relationship of UD America and UD Japan was governed by a Distributor Agreement, which outlined the annual number of trucks UD America would distribute. (Doc. 106 at 3.) The Distributor Agreement disclaims any agency relationship between the companies and represents that UD America was the non-exclusive distributor of trucks and parts manufactured by UD Japan. (*Id.* at 3-4.)

## PROCEDURAL BACKGROUND

On February 15, 2012, Montana Trucks filed an action against UD America alleging breach of contract, fraud, and punitive damages. (Doc. 1.) UD America moved for summary judgment. (Doc. 30.) While that motion was pending, Montana Trucks filed a Second Amended Complaint, adding a constructive fraud claim and UD Japan as a defendant. (Doc. 71.) On August 12, 2013, this Court granted UD America's motion for summary judgment, concluding that the Contract's Limitation of Remedies clause barred the breach of contract claim, and

Montana's two-year statute of limitations barred the fraud claim and the punitive damages claims. (Doc. 81at 23.) The Court initially reserved judgment on the newly-asserted constructive fraud claim, (*id.* at 25-26), but on October 9, 2013, granted summary judgment on the grounds the claim was also barred by the Montana statute of limitations, (Doc. 88 at 5).

This Court applied its summary judgment grant to UD Japan as well. (Doc. 92.) Montana Trucks and UD Japan entered into a stipulation allowing Montana Trucks to reserve its claims against UD Japan while allowing UD Japan to reserve the position that this Court lacks personal jurisdiction. (Doc. 90. at 2.) This Court considered the stipulation and dismissed the case with prejudice. (Doc. 91.) Montana Trucks appealed, and on July 28, 2016, the Ninth Circuit affirmed-in-part, reversed-in-part, and remanded-in-part. (Doc. 96.) The Ninth Circuit partially agreed with this Court's conclusion on the contract claim, remanding "insofar as the plaintiff seeks damages for the loss resulting in the ordinary course of events from the seller's breach." (*Id.* at 2-3.) Citing the recent Montana Supreme Court decision in *Masters Group International, Inc. v. Comerica Bank*, 352 P.3d 1101 (Mont. 2015), the court reversed the fraud claim, finding that the Contract's choice-of-law provision applied to tort claims against UD America, which in turn meant that Texas' four-year statute of limitations for fraud applied as to UD America. (*Id.* at 4.) Relevant here, the court remanded the fraud claim

4

against UD Japan to address "[UD Japan's] post-*Masters Group* argument that since it was not a party to the contract, Montana Trucks' claims against it are barred by the Montana statute of limitations." (*Id.*)

## ANALYSIS

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden on demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (internal quotation marks omitted.) "Although the plaintiff cannot simply rest on the bare allegations in the complaint, uncontroverted allegations in the complaint must be taken as true unless they are contradicted by affidavit, in which case factual disputes are resolved in the plaintiff's favor." *Mont. Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1181 (D. Mont. 2012) (internal quotation marks omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, ___U.S. ___, 134 S. Ct. 746, 753 (2014)). With respect to Montana, the Ninth Circuit has "recognized that Mont. R. Civ. P.

5

4(b)(1), which serves as the state's long-arm statute, permit[s] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process." *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 578-79 (9th Cir. 2011). However, in 2015, the Montana Supreme Court outlined a two-step test to determine whether the exercise of specific jurisdiction is proper:

> [Courts] first determine whether personal jurisdiction exists under M.R. Civ. P. 4(b)(1). Personal jurisdiction may exist under Rule 4(b)(1) in one of two ways: a party may be found within the state of Montana and subject to general jurisdiction, or the claim for relief may arise from any of the acts listed in Rule 4(b)(1)(A-G) and create specific jurisdiction for the purpose of litigating that particular claim. If personal jurisdiction exists under the first step of the test, [a court] then determine[s] whether the exercise of personal jurisdiction conforms with the traditional notions of fair play and substantial justice embodied in the due process clause. If personal jurisdiction does not exist under the first part of the test, further analysis under the second part of the test is unnecessary.

*Milky Whey, Inc. v. Dairy Partners*, 342 P.3d 13, 17 (Mont. 2015) (internal quotations and citations omitted); *see also Techmanski v. Quanta Field Service, LLC*, 2015 WL 7005617 (D. Mont. 2015) (applying the *Milky Whey* test in federal district court). While neither party addressed the *Milky Whey* test, it is the controlling test in Montana for the exercise of personal jurisdiction. Applying it here, UD Japan's motion is granted.

### A. Piercing the Corporate Veil

Montana Trucks' claims rest on the theory that personal jurisdiction is

6

established through piercing the corporate veil, insisting that UD America was the alter ego or agent of UD Japan. That argument is unpersuasive under the Montana tests for agency and alter ego. *See Fischer v. Int'l Student Exchange, Inc.*, No. CV 14-52-BU-DWM, 2015 U.S. Dist. LEXIS 58779, at *2 (D. Mont. May 5, 2015). According to the Montana Supreme Court, "[p]iercing the corporate veil is an equitable remedy used to curb injustices resulting from the improper use of a corporate entity. Because the remedy is equitable, no concrete formula exists under which a court will disregard the separate identity of the corporate entity. Use of this remedy depends entirely upon the circumstances of each case." *Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989). The Court developed a two-prong test to determine whether the corporate veil can be pierced. First, the defendant must be shown to be an alter ego, instrumentality, or agent of the corporation. *See Peschel Family Trust v. Colonna*, 75 P.3d 793, 796-97 (Mont. 2003) (abrogated on other grounds by *Boyne USA, Inc. v. Lone Moose Meadows, LLC*, 235 P.3d 1269, 1273 (Mont. 2010)). Second, evidence must exist that the corporate entity was used as a "subterfuge to defeat public convenience, justify wrong or perpetrate fraud." *Id.*

A subsidiary is the alter ego of the parent corporation "if the corporate affairs of both are so intertwined that, in effect, each no longer has a separate identity." *Hando*, 771 P.2d at 960. Montana courts consider fourteen factors in

determining whether a shareholder, in this case the parent company UD Japan, is an alter ego of its subsidiary. *See Meridian Mineral Co. v. Nicor Minerals, Inc.*, 742 P.2d 456, 462 (Mont. 1987). No single factor is dispositive. *Peschel*, 75 P.3d at 797. Only two of the fourteen factors are implicated here: (1) whether the shareholder owns all or most of the corporation's stock, and (2) whether the shareholder is a director and/or president of the corporation. Regarding the first factor, UD America was the product of a joint venture between UD Japan, Marubeni America Corporation, and Marubeni Co. Ltd., and, at the time of the alleged wrongful conduct, UD Japan owned 50% of the UD America's stock. (Doc. 118 at 11; *see also* Doc. 106-1 at 3.) As to the second factor, UD Japan appointed a majority of UD America's board of directors, as well as its President. (Doc. 118 at 11.) However, satisfying the first two factors alone will not suffice to pierce the corporate veil. As explained in *Hando*:

> The full ownership of a subsidiary, use of the same people as directors and officers in both corporations, and engagement in the same general business enterprise may all be insufficient to indicate the subsidiary is merely an alter ego. Courts also look at such factors as the same type of day-to-day business activities of each corporation, sharing of the same address or name, the commingling of funds, undercapitalization of the subsidiary and failure to maintain separate business records.

771 P.2d at 960. Montana Trucks has not satisfied any of the other factors, such as commingling of funds, undercapitalization, or failure to separate business records. As a result, it fails to show alter ego. *Compare Meridian Minerals Co.*,

742 P.2d at 462 ("A mere showing that one corporation is owned by another, or that the two share interlocking officers or directors is insufficient to support a finding of alter ego."), *with Envtl. Mgmt. v. Toenyes*, 679 P.2d 213, 218-19 (Mont. 1984) (finding alter ego when the parent owned 100% of the subsidiary's stock, corporate formality had been abandoned, routine transfers were done between the two companies' accounts, the subsidiary was undercapitalized, and the subsidiary's operations were financed by the parent).

Alternatively, "[a] subsidiary corporation may be the mere agent of a parent company for a particular transaction if the parent company exercises control over the conduct and activities of the subsidiary so that in effect the subsidiary is merely acting on behalf of the parent." *Hando*, 771 P.2d at 960. Montana Trucks does not present any facts to support this theory. It does not allege that UD America had any actual or ostensible authority to bind UD Japan to a contract with Montana Trucks, either through an express agency agreement or some act or omission. *See e.g. Audit Serv. Inc. v. Elmo Road Corp.*, 575 P.2d 77, 79 (Mont. 1978).

Because Montana Trucks fails to show that UD America is the alter ego or mere agent of UD Japan, it has not met its burden to pierce the corporate veil. As a result, personal jurisdiction over UD Japan is based on UD Japan's connections to this forum, not UD America's.

## B. General Jurisdiction

Montana Rule of Civil Procedure 4(b)(1) subjects "[a]ll persons found within the state of Montana" to the general personal jurisdiction of the courts of this state. *Milky Whey*, 342 P.3d at 18. To be "found" within Montana for general jurisdiction purposes, "it is necessary that the defendants' activities are 'substantial' or 'systematic and continuous.'" *Id.* Here, there is no indication that UD Japan itself meets the requirements of general jurisdiction. UD Japan is headquartered in Japan and it has no business operations, advertising, products, real estate, employees, or revenues from Montana. (*See* Doc 106 at 2-3.) Moreover, Montana Trucks concedes that UD Japan's individual contacts with Montana would be insufficient to establish general jurisdiction, but argues "UD Japan's alleged contacts are through its corporate subsidiary," or UD America. (Doc. 118 at 7.) Because this argument relies solely on the unpersuasive alter ego/agency theory, Montana Trucks fails to make a prima facie showing of jurisdictional facts for general jurisdiction over UD Japan.

## C. Specific Jurisdiction

Absent general personal jurisdiction, Montana courts may exercise specific jurisdiction over any person "as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the . . . acts" listed in the

state's "long-arm statute." *Milky Whey*, 342 P.3d at 21; M. R. Civ. P. 4(b)(1)(A-G). Montana Trucks does not argue UD Japan's own acts would satisfy the standard, but once again claims "UD America purposely availed itself of jurisdiction in Montana through the acts it took relative to Montana Trucks." (Doc. 118 at 12.) Because Montana Trucks fails to pierce the corporate veil, the argument fails. And, none of the provisions of Montana Rule 4(b)(1)(A-G) are independently satisfied by UD Japan. *See Milky Whey*, 342 P.3d at 18 ("A nonresident defendant's mere act of entering into a contract with a forum resident does not provide the necessary jurisdictional contact between the defendant and the forum state."); *Tackett v. Duncan*, 334 P.3d 920, 928 (Mont. 2014) (accrual of tort action depends on "where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries"); *Columbia Falls Aluminum Co. v. Hindin/Owen/Engelke, Inc.*, 728 P.2d 1342, 1344-45 (Mont. 1986) (determining the exercise of jurisdiction over anyone who enters into "a contract for services to be rendered or for materials to be furnished in Montana by such person," depending on where the contract was negotiated, where the contract was to be performed and where the non-resident defendant influences performance from). Given that UD Japan's acts do not give rise to specific jurisdiction under Rule 4(b)(1), the second prong of the *Milky Whey* test—whether the exercise of jurisdiction over the defendant would offend

11

"traditional due process notions of fair play and substantial justice"—need not be addressed. 342 P.3d at 17. Even if it were, Montana Trucks has not shown that UD Japan purposefully directed its activities towards Montana or availed itself of the privilege of conducting business in Montana. *See Holland Am. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("The placement of a product into a stream of commerce, without more, is not an act purposefully directed toward a forum state." ). Jurisdiction is therefore not established. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

## CONCLUSION

As Montana Trucks fails to pierce the corporate veil and has not established general or specific jurisdiction, IT IS ORDERED that UD Japan's motion (Doc. 105) is GRANTED. Montana Trucks' claims against UD Japan are DISMISSED for lack of personal jurisdiction.

Dated this 20th day of December, 2016.

Donald W. Molloy, District Judge
United States District Court