IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



**FILED**

MAY 1 6 2017

Clerk, U.S. District Court
District Of Montana
Missoula

MONTANA TRUCKS LLC,

Plaintiff,

vs.

UD TRUCKS NORTH AMERICA INC,
f/k/a NISSAN DIESEL AMERICA INC.,
and UD TRUCKS CORP., f/k/a NISSAN
DIESEL MOTOR CO., LTD.,

Defendants.

CV 12–23–M–DWM

OPINION
and ORDER

This case involves a contract dispute between Plaintiff Montana Trucks

LLC ("Montana Trucks") and Defendant UD Trucks North America, Inc. f/k/a

Nissan Diesel America, Inc. ("UD America"). UD America is a distributor of

medium-duty cab and chassis trucks manufactured by UD Trucks Corp. f/k/a

Nissan Diesel Motor Co., Ltd. ("UD Japan"). (Pl.'s SDF, Doc. 134 at I(1).) On

December 10, 2003, UD America and Montana Trucks entered into a Dealer Sales

and Service Agreement ("the Contract") in which UD America agreed to supply

UD3300 model trucks to Montana Trucks. (Dec. 20, 2016 Order, Doc. 123 at 2.)

A Distributor Agreement exists between UD America and UD Japan under

which UD Japan warranted to UD America that its trucks were free from defects in

1

material and workmanship.  (Doc. 134 at I(6).)  The Distributor Agreement

specifies, and this Court agreed, that UD America is not an agent or alter ego of

UD Japan.  (*Id.*; Doc. 123 at 1.)  As the manufacturer of the trucks, UD Japan

self-determined and certified that the UD3300 trucks supplied were compliant

with Federal Motor Vehicle Safety Standard ("FMVSS") 121.  (Doc. 134 at I(8).)

An Incomplete Vehicle Document, provided by UD Japan, was included with

every cab-chassis sold to UD America for distribution to its dealers, including

Montana Trucks.  (*Id.*)

Between January 1, 2007 and January 1, 2010, Randy Botsford, his brother

Terry Botsford, and Mark Byington all had ownership interest in Montana Trucks.

(*Id.* at I(10).)  Randy Botsford has been a managing member since 2007.  (*Id.* at

I(11).)  The Botsfords and Byington were also members of Pioneer Drive, LLC

("Pioneer Drive"), another Montana corporation.  (*Id.* at I(12).)  Specifically,

Randy Botsford was the president, Terry Botsford was the attorney of record, and

Mark Byington was the Chief Financial Officer for Pioneer Drive.  (*Id.*)  In 2006,

Pioneer Drive entered into a separate agreement with UD America by which it

would convert UD3300 model trucks from incomplete 4x2 chassis with left-hand

side drive configuration and controls into dualized truck chassis with right-hand

driver configuration and controls, for use as street sweepers.  (*Id.* at I(13),(27).)

In May 2007, Nevada Automotive Test Center ("Test Center") reported to Pioneer

Drive that the UD3300 truck it tested, which Pioneer Drive had converted into a 4x4, did not meet FMVSS 121 standards. (*Id.* at I(16).) In July 2008, Pioneer Drive filed a complaint against UD America's predecessor corporation, Nissan Diesel America, Inc., alleging the UD3300 air brake system did not comply with FMVSS 121. (*Id.* at I(14).)

In October 2008, Pioneer Drive received a report from an independent brake testing company ("Link-Radlinski"), which found the brakes on both unmodified and modified UD3300 trucks failed FMVSS 121 compliance testing, (*id.* at I(18)); however, UD America denied that the brakes were noncompliant, (Doc. 123 at 2). UD America claims that it relied upon UD Japan's assurances of compliance. (Doc. 134 at I(22),(23).) The extent and timing of UD America's actual knowledge of the noncompliance is disputed by Montana Trucks. (*Id.*) In 2009, during the pendency of the Pioneer Drive lawsuit, UD America terminated the Contract with Montana Trucks and refused to repurchase the faulty vehicles. (Doc. 123 at 2.)

On February 1, 2010, Kazuaki Sasame ("Sasame"), the president of UD America and veteran executive of UD Japan, testified that the compliance certificates that accompanied the UD3300 trucks were false. (Doc. 123 at 2; Doc. 134 at II(5),(6).) This date is the last possible date the claims in the Second Amended Complaint could have arisen. (Doc. 123 at 2.) However, the parties

3

dispute the earliest possible date of accrual.

Here, Montana Trucks seeks damages relating to two trucks that UD America refused to repurchase ($116,344), specialty tools and parts ($45,225.84), lost business value and operating costs ($2,420,000), as well as an undetermined amount of punitive damages. (Doc. 134 at I(24).) The two trucks at issue were purchased by Montana Trucks on or about December 28, 2007 and then modified by Pioneer Drive in October 2008. (*Id.* at I(29),(30).) It is unclear whether these two trucks are the same trucks that were the subject of the 2010 settlement in the Pioneer Drive litigation with UD America or what affect this fact may have in the ultimate disposition of this case. How and whether these trucks were ultimately under Montana Trucks' ownership also remains in dispute. (*Id.* at I(33),(34).) Additionally, the parties dispute UD America's responsibilities under the Contract post-recall. (*Id.* at I(36).)

## PROCEDURAL BACKGROUND

On February 15, 2012, Montana Trucks filed a lawsuit against UD America alleging breach of contract, fraud, and punitive damages. (Doc. 1.) UD America moved for summary judgment. (Doc. 30.) While that motion was pending, Montana Trucks filed a Second Amended Complaint, adding a constructive fraud claim and naming UD Japan as a defendant. (Doc. 71.) On August 12, 2013, UD

4

America's motion for summary judgment was granted in holding that the Contract's Limitation of Remedies clause barred the breach of contract claim, and Montana's two-year statute of limitations barred the fraud and punitive damages claims. (Doc. 81at 23.) Judgment was initially reserved on the newly-asserted constructive fraud claim, (*id.* at 25-26), but on October 9, 2013, summary judgment was entered on the grounds the claim was also time barred, (Doc. 88 at 5). Summary judgment was granted in favor of UD Japan as well. (Doc. 92.) Montana Trucks and UD Japan entered into a stipulation allowing Montana Trucks to reserve its claims against UD Japan while allowing UD Japan to reserve a personal jurisdiction challenge. (Doc. 90. at 2.) Acknowledging the stipulation, the case was dismissed with prejudice. (Doc. 91.)

Montana Trucks appealed, and on July 28, 2016, the Ninth Circuit affirmed in part, reversed in part, and remanded. (Doc. 96.) Relevant here, the Ninth Circuit affirmed the conclusion that the Contract's Limitation of Remedies provision bars Montana Trucks' claim for consequential damages for breach of contract, (*id.* at 1); but, remanded "insofar as the plaintiff seeks damages for the loss resulting in the ordinary course of events from the seller's breach," (*id.* at 2-3). Citing a recent Montana Supreme Court decision, *Masters Group International, Inc. v. Comerica Bank*, 352 P.3d 1101 (Mont. 2015), the Circuit reversed the fraud claim, finding that the Contract's choice-of-law provision

applied to tort claims against UD America, which in turn meant that Texas'
four-year statute of limitations for fraud applied. (*Id.* at 4.) It also remanded the
attendant punitive damages claims. (*Id.*) Additionally, the Circuit remanded the
constructive fraud and negligent misrepresentation claims against UD America to
determine whether those claims are barred by the applicable Texas statute of
limitations. (*Id.* at 5.) Likewise, the Circuit further remanded the fraud claim
against UD Japan to address "[UD Japan's] post-Masters Group argument that
since it was not a party to the contract, Montana Trucks' claims against it are
barred by the Montana statute of limitations." (*Id.* at 4.)

On December 20, 2016, UD Japan's motion to dismiss for lack of personal
jurisdiction was granted. (Doc. 123.) On that same date, UD America filed a
second motion for summary judgment. (Doc. 120.) That motion must now be
addressed.

## SUMMARY CONCLUSION

UD America's motion for summary judgment is denied in part and granted
in part. Viewing the evidence in the light most favorable to Montana Trucks,
reasonable minds could reach more than one conclusion as to the claims for fraud
and breach of contract. First, the date of accrual for the fraud claim is reasonably
disputed and, thus, Montana Trucks' claim is not barred as a matter of law by the

Texas statute of limitations. Second, because the fraud claim is not barred as a matter of law, whether the elements of fraud are met in this case remains a question of fact. Third, the amount and source of damages due to UD America's breach of contract is disputed. And, because Montana Trucks' claim for fraud may have merit and is not barred, the claim for punitive damages remains a viable question if the requisite standard of proof is met. Summary judgment is appropriate as to Montana Trucks' claims for constructive fraud and negligent misrepresentation.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). In resolving whether a genuine issue exists, courts "view evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party." *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008). On motion for summary judgment, the question is whether a fair-minded jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 252. Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment; factual disputes which are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

ANALYSIS

## I. Fraud

Under the Ninth Circuit's mandate, this Court must apply Texas law to both Montana Trucks' contract claims and its tort claims arising out of performance of the Contract. *Montana Trucks, LLC v. UD Trucks North America, Inc.*, __ Fed. Appx. __, 2016 WL 4039746 (9th Cir., July 28, 2016). Having done so, UD America's motion for summary judgment is denied.

### A. Texas Statute of Limitations

The latest possible date that Montana Trucks' fraud claim could have accrued was on February 1, 2010. (Doc. 123 at 2.) Under Texas law, the statute of limitations for an actual claim of fraud is four years. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4). Generally, causes of action accrue and statutes of limitation begin to run when facts come into existence that authorize a claimant to seek a judicial remedy. *Hooks v. Samson Lone Star, L.P.*, 457 S.W.3d 52, 57 (Tex. 2015). In other words, the statute of limitations for fraud begins to run from the time the party knew of misrepresentation. *Exxon Corp. v. Emerald Oil & Gas Co.*,

8

348 S.W.3d 194, 216 (Tex. 2011). Montana Trucks maintains that February 1, 2010 is the date upon which the statute of limitations began to run, thus making Montana Trucks' filing of February 15, 2012, timely. (Doc. 127 at 5.) However, UD America disputes this and argues that accrual occurred as early as May 2007. (Doc. 121 at 8.) The record provides additional possible dates of accrual.

May 2007: UD America asserts that Montana Trucks had actual and/or constructive knowledge of possible brake issues as early as May 2007 when Pioneer Drive received the Test Center report, hence causing Montana Trucks' claim to be untimely. (*Id.*) However, Montana Trucks argues that the Test Center report was based on a single UD3300 truck that had already been converted into a 4x4 by Pioneer Drive and, thus, it failed to provide information of "model-wide noncompliance within all UD3300 trucks." (Doc. 127 at 5.) Montana Trucks further claims that while investigating the brake compliance issues, UD America assured them that the UD3300 trucks were in fact compliant and the brake issue was an "isolated incident." (*Id.* at 8.)

July 2008: It is undisputed that Pioneer Drive filed suit against UD America's predecessor in July 2008, alleging the model UD3300 truck did not comply with FMVSS 121 standards. (Doc. 134 at I(14).) It is unclear from the record what occurred between May 2007 and July 2008 that caused Pioneer Drive to file suit. Even imputing all knowledge of Pioneer Drive to Montana Trucks, the

9

fact that Pioneer Drive did not bring a claim until July 2008 indicates a lack of sufficient knowledge until that date. Although neither party asserts this as the date of accrual, it appears to be a persuasive option.

October 2008: On October 27, 2008, Link-Radlinski performed FMVSS 121 compliance testing for Pioneer Drive on both modified and unmodified UD3300 trucks. (*Id.* at I(18)) This testing provided the first report identifying an unmodified UD3300 truck as noncompliant. (*Id.*) Thus, although not argued by the parties, this is another date that could logically serve as the accrual date.

February 2010: On February 1, 2010 Sasame admitted in deposition, in the presence of Randy Botsford and Mark Byington, that the FMVSS 121 certificates had been falsified by UD Japan. (*Id.* at II(29).) Montana Trucks argues that this is when accrual began because Montana Trucks' "actual knowledge" of fraud did not occur until that date. (Doc. 127 at 4, 5.)

The date of accrual is a disputed issue of fact, which jurors could reasonably find to be any of the above-mentioned dates; many of which would cause Montana Trucks' claim to be timely. Additionally, the statute of limitations in fraud claims can be tolled. Because "fraud vitiates whatever it touches," the limitations period does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it. *Hooks*, 457 S.W.3d at 57 (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 69 (Tex. 2011)). Although the date a cause of action

accrues is normally a question of law, reasonable diligence is usually an issue of fact. *Id.* at 57-58.

Nevertheless, in some circumstances where there is actual or constructive notice or when information is "readily and publicly available," a court may determine, as a matter of law, that the exercise of reasonable diligence would have lead to the discovery of the wrong within the statutory period and, thus, the accrual of the fraud claim is not tolled. *Id.* at 57-59. But, when a defendant's fraudulent misrepresentation extends to the public record itself, reasonable diligence remains a fact question. *Id.* at 61. In *Hooks*, the plaintiffs brought a fraud claim upon discovering the defendants had deprived them of royalties by misrepresenting the fact that a well was located on their property. *Id.* at 55-56. The defendants had also filed false plat maps with the Railroad Commission that showed incorrect placement of the well. *Id.* at 56. The defendants argued that the statute of limitations had run and that exercise of reasonable diligence by the plaintiffs would have discovered the fraud because older plats showed the correct placement of the well. *Id.* at 57. While the Texas Supreme Court agreed that public records may, under certain circumstances, establish a "lack of diligence" in the discovery of fraud, in this instance the records themselves were tainted by fraud and thus provided no conclusive proof on the subject. *Id.* at 55. Although the defendants argued that inconsistencies "should have caused Hooks to inquire

11

further," the Court stated that "[t]o require, as a matter of law, that Hooks double-check the more recent filings against earlier filings is a higher burden than reasonable diligence requires." *Id.* at 60. The Court ultimately held that diligence in discovering the underlying fraud was a question of fact for the jury. *Id.*

UD America asserts that the statute of limitations in this case cannot be tolled because it did not know that UD Japan was falsifying the FMVSS 121 certificates. (Doc. 121 at 10, 11.) Furthermore, UD America argues that because the Test Center report gave Randy Botsford "actual knowledge" contrary to the public record, Montana Trucks, as a matter of law, did not exercise reasonable diligence. (Doc. 135 at 11.) Montana Trucks responds that, according to *Hooks*, it would be an unreasonably high burden to expect Montana Trucks to investigate beyond what the manufacturer, distributor, and publicly-available information all provided. (Doc. 127 at 9.)

The public record in this instance consists of the FMVSS 121 compliance certificates, which were fraudulent. After receiving the reports of brake issues, Montana Trucks sought information and assistance from UD America who, in turn, relied upon the same falsified records. It does not make Montana Trucks' actions any more or less diligent to argue that UD America did not know of the falsification. UD America's argument regarding Montana Trucks' knowledge based solely on the Test Center report does not establish that, as a matter of law,

12

Montana Trucks did not exercise reasonable diligence. Montana Trucks' fraud claim is not time barred as a matter of law because there are facts at issue.

## B. Elements of Fraud

UD America asserts that even if the claim is timely, Montana Trucks cannot establish the essential elements of fraud. (Doc. 121 at 11.) A plaintiff seeking to prevail on a fraud claim under Texas law must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *Emerald Oil*, 348 S.W.3d at 217. A defendant seeking summary judgment must conclusively negate at least one essential element of the plaintiff's cause of action or conclusively establish each element of an affirmative defense. *McMahan v. Greenwood*, 108 S.W.3d 467, 478 (Tex. App. 2003).

### 1. UD America made material misrepresentations to Montana Trucks with knowledge that the representations were false, or, at minimum, made the representations recklessly without knowledge of their truth.

Actionable representations must involve material facts, not mere opinion or puffery. *Matis v. Golden*, 228 S.W.3d 301, 307 (Tex. App. 2007). A

representation is "material" if it is important to the party to whom it is made in making a decision regarding the particular transaction. *Id.* Texas courts have defined "material" to mean that a reasonable person would attach importance to, and would be induced to act on the information, in determining the person's choice of actions in the transaction in question. *Id.*

It is undisputed that UD Japan, as the manufacturer, certified all UD3300 trucks as compliant with FMVSS 121. (Doc. 121 at 12.) UD America consistently "points to the empty chair" and argues that because it was not an agent or alter ego of UD Japan and did not certify the UD3300 trucks, UD America cannot be found culpable for UD Japan's actions related to that certification. (*Id.* at 15.) This argument is unpersuasive and fails to show that UD America did not make material representations to Montana Trucks. Montana Trucks argues that UD America represented to Montana Trucks that the UD3300 trucks would be certified for use in the United States. (Doc. 127 at 14.) UD America disputes that the Contract contains such language, (Doc. 135 at 4); however, the Contract does state that the UD3300 trucks will be sold by UD America to Montana Trucks "for resale." (Contract, Doc. 76-1 at 2(d).) A reasonable person may infer this to mean that the UD3300 trucks met all federal compliance standards and were sellable within the United States market.

Additionally, UD America continues to disavow all knowledge of "any

14

problems relating to the air brake system and non-compliance with FMVSS 121 until May 2007 when the [Test Center] testing was performed." (Doc. 121 at 15.) It further claims that UD Japan assured them that the trucks met certification requirements and continued to do so throughout the Pioneer Drive litigation, thus somehow relieving UD America of all responsibility for those representations. (*Id.* at 16.) The argument that only UD Japan made representations is not persuasive. Montana Trucks insists that, following the Test Center report, Randy Botsford was "assured by UD America that no problem with the UD3300 trucks existed, that it was likely an isolated issue, and that the trucks met all federal standards." (Doc. 134 at II(9).) Once compliance was in question, UD America made further representations to Montana Trucks in the form of assurances.

A statement is not fraudulent unless the speaker knew it was false when made, or the speaker made it recklessly without knowledge of its truth. *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 613 (Tex. App. 2000). Representations are reckless if made without "sufficient information or basis to support them." *Matis*, 228 S.W.3d at 308. Proof that a defendant made a statement knowing of its falsity or without knowledge of its truth may be shown by direct or circumstantial evidence. *Plunkett*, 27 S.W.3d at 613. "If the facts represented do not exist, and the person states of his own knowledge that they do, and induces another to act upon his statement, the law imputes to him a fraudulent purpose." *Matis*, 228

S.W.3d at 308. Additionally, a corporation can act and acquire knowledge only through its agents. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. 2008). Knowledge held by corporate officers or directors may be imputed to the corporation itself. *Id.* It is undisputed that Sasame was a corporate officer and agent for both UD America and UD Japan. (Doc. 134 at II(5),(6).)

Montana Trucks continues to claim that an agent/principal relationship existed between UD Japan and UD America despite this Court's determination to the contrary. (Doc. 127 at 9.) Although that argument is not persuasive, Montana Trucks also argues that because Sasame held executive positions with UD Japan and UD America, his knowledge of the FMVSS 121 noncompliance was imputed to UD America. Montana Trucks focuses on 2003 representations, but nothing in the record shows that UD America knew of the noncompliance issues at that time. It is arguable, however, that this knowledge did come about as early as 2004 when Sasame was appointed as president of UD America. Furthermore, Montana Trucks cites to an email correspondence from May 9, 2007, from a UD Japan engineer to Sasame and another UD America president, Dayle Wetherell ("Wetherell"), in which the engineer states the UD3300 was "very far from FMVSS 121 standard level" and that he "doubt[ed] UD3300's brake reaction time actual ability." (*Id.* at 10.) The date of UD America's knowledge of UD Japan's fraudulent acts, and UD America's alleged participation in further perpetuating

16

that fraud, remain questions of fact for a jury's consideration.

> **2.**      **UD America intended Montana Trucks to act or rely upon representations that the UD3300 trucks were compliant.**

A plaintiff must "demonstrate that he relied upon the fraudulent misrepresentation to his detriment." *Matis*, 228 S.W.3d at 311. Reliance is established by showing that the defendant's actions and representations induced the plaintiff "to act or to refrain from action." *Id.* Additionally, the defendant must intend its false representation to induce action. *Plunkett*, 27 S.W.3d at 613. While a party's intent is determined at the time the party made the representation, it may also be inferred from subsequent acts. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Id.*

Both parties seem to revert to an argument of reliance based upon entering the Contract in 2003. (Doc. 121 at 15; Doc. 127 at 15.) This argument is unpersuasive because it is untimely. Instead, the focus is on representations made by UD America after the 2007 Test Center report when compliance was called into question and the subsequent reliance by Montana Trucks.

Montana Trucks claims that "Wetherell, Sasame and David Jarrett (counsel

17

for UD America) repeatedly assured compliance of the UD3300 model trucks in an attempt to persuade Montana Trucks to remain in the [Contract]." (Doc. 127 at 15.) Reliance upon those assurances may also be evidenced by the undisputed fact that Montana Trucks continued to purchase UD3300 trucks from UD America after the Test Center report. (Doc. 134 at I(29).) Montana Trucks also asserts that UD America's subsequent acts of continued assurances after the Link-Radlinski report and after a UD Japan engineer expressed doubts about compliance to UD America, may be used to infer intent. Sufficient evidence in the record exists that could lead reasonable minds to believe that UD America intended Montana Trucks to rely upon their representations that the UD3300 trucks were FMVSS 121 compliant. This remains a question of fact for the jury.

### 3. Montana Trucks suffered injury by relying upon UD America's representations.

The extent of injury or damage need not be proved, if the damage is shown to be substantial. *Turner v. Houston Agric. Credit Corp.*, 601 S.W.2d 61, 64 (Tex. Civ. App. 1980). The word "damage" is not restricted to monetary loss, and it is sufficient that the defrauded party has been induced to incur legal liabilities or obligations which would not have been incurred except for the fraud. *Id.* Both parties continue to misapprehend the issue and argue that Montana Trucks' injury was in entering the Contract in 2003. This argument is misplaced. Injuries

18

suffered by Montana Trucks as it relates to fraud must focus on the losses

Montana Trucks incurred because of their reliance upon UD America's continued

assurances of compliance after they became aware of the actual noncompliance of

the UD3300 trucks. Montana Trucks claims that it "suffered injury by continuing

to comply with the [Contract] and by continuing to acquire operating loans based

on UD America's false statement that its products complied with FMVSS 121."

(Doc. 134 at II(11).) In an attempt to refute Montana Trucks' claim of injury, UD

America argues that because Montana Trucks sold the two trucks in question to

Pioneer Drive in October 2008 for full value, Montana Trucks has not been

damaged. (Doc. 121 at 17.) This argument is unpersuasive.

Although the extent and amount of damages remain in dispute, reasonable

minds may consider and include costs related to the continued purchase of

noncompliant UD3300 trucks from UD America, purchase of specialized

equipment to maintain those trucks, loss of business value and operating losses, as

well as the cost of litigation. Regardless, Montana Trucks has set forth sufficient

allegations of injury to defeat UD America's motion for summary judgment. The

final determination of actual damages, including whether or not Montana Trucks is

able to establish injury, are questions of fact to be determined by a jury.

Accordingly, because Montana Trucks' fraud claim may have merit and is not

barred, it survives summary judgment.

## II.    Breach of Contract

The Ninth Circuit affirmed this Court's conclusion that the Contract's Limitation of Remedies provision is not unconscionable and bars recovery by either party of "consequential damages, incidental damages, or other indirect or special damages or loss." *Montana Trucks, LLC.*, 2016 WL 4039746.  However, it further determined that this Court's interpretation of the provision was too broad and reversed "insofar as the plaintiff seeks damages for 'the loss resulting in the ordinary course of events from the seller's breach.'" *Id.* (citing Tex. Bus. & Com. Code Ann. § 2.714(a)).

UD America argues that Montana Trucks, at most, has a breach of warranty claim as opposed to a breach of contract claim. (Doc. 121 at 21.)  To support this argument, UD America states that "Texas law distinguishes between breach of warranty and breach of contract, and does not permit contract damages when a buyer has accepted nonconforming goods." (Doc. 135 at 12 (citing *A.O. Smith Corp. v. Elbi S.P.A.*, 123 Fed. Appx. 617, 619 (5th Cir. 2005)).)  UD America further insists that "[i]n that instance, breach of warranty is the remedy." (Doc. 121 at 21 (citing *A.O. Smith Corp.*, 123 Fed. Appx. at 619).)  This argument is misplaced.  Breach of contract remedies are available to a buyer who properly revokes acceptance.  Tex. Bus. & Com. Code Ann. § 2.608.   In *Toshiba Mach.*

20

*Co. v. SPM Flow Control*, 180 S.W.3d 761 (Tex. App. 2005), the court rejected the same argument UD America makes here, that delivery of a product precludes a breach of contract claim, even if the product is defective. *Id.* at 776. It is a buyer's acceptance or rejection of goods which determines the remedies available to the buyer, not the seller's delivery. *Trident Steel Corp. v. Wiser Oil Co.*, 223 S.W.3d 520, 526 (Tex. App. 2006). Furthermore, in *A.O. Smith*, the Fifth Circuit held that "whether the buyer has complied with the requirements of § 2-608 in giving adequate notice of revocation of acceptance is a question for the trier of fact. Again, revocation must occur 'within a reasonable time after the buyer discovers or should have discovered the ground for it.' The words 'reasonable time' as used in § 2.608(b) in and of themselves express the existence of a fact. Accordingly, it was for the jury to decide." *Id.* at 621.

UD America argues that Montana Trucks "knowingly purchased and took delivery of non-conforming goods . . . seven months after having notice of that nonconformity." (Doc. 121 at 21.) It again points to the 2007 Test Center report as proof of Montana Trucks' knowledge of the "nonconformity." (*Id.*) As discussed above, the Test Center report merely established that one modified UD3300 truck failed to meet FMVSS 121 standards. Furthermore, UD America ignores the fact that on March 24, 2009, Montana Trucks demanded that UD America repurchase the two noncompliant trucks, which could reasonably be

21

interpreted as a revocation of that acceptance. (Doc. 134 at II(25).) Whether

Montana Trucks gave UD America adequate notice of revocation of acceptance,

which would entitle Montana Trucks to breach of contract damages, is a question

for the jury. Thus, summary judgment on this issue is inappropriate.

Additionally, assuming Montana Trucks is entitled to breach of contract

damages, the amount of those damages and whether they constitute "loss resulting

in the ordinary course of events from the seller's breach" remains in dispute. UD

America argues that Montana Trucks' damages fall within the Limitations of

Remedies provision of the Contract, and thus, recovery is prohibited. (Doc. 121 at

19.) Montana Trucks claims that the two UD3300 trucks in question were

nonconforming and were sold at a loss, the specialty tools in question were

"acquired in the ordinary course of events stemming from the [Contract], which

UD America then breached," and additional costs were incurred "bringing the

brake system into compliance, storage, registration, and marketing expenses."

(Doc. 127 at 20.)

Under Texas law, a buyer who has "accepted goods and given notification

may recover as damages for any non-conformity of tender the loss resulting in the

ordinary course of events from the seller's breach as determined in any manner

which is reasonable." Tex. Bus. & Com. Code Ann. § 2.714(a). "Non-conformity"

includes not only breaches of warranties but also any failure of the seller to

22

perform according to his obligations under a contract; in the case of such non-conformity, the buyer is permitted to recover for his loss "in any manner which is reasonable." *Id.* at cmt. 2. Whether or not the costs that Montana Trucks has claimed "result from the ordinary course of events" remains a question of fact. UD America is not entitled to judgment as a matter of law on this issue.

## III. Constructive Fraud and Negligent Misrepresentation

Montana Trucks concedes that its claim for negligent misrepresentation is barred by the Texas two-year statute of limitations. (Doc. 127 at 22); *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 565 (Tex. App. 2014). Thus, summary judgment is granted as to that claim.

Under Texas law, constructive fraud is governed by a four year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3); *Williams v. Kahlaf*, 802 S.W.2d 651, 658 (Tex. 1990). As with Montana Trucks' claim of fraud, the parties dispute the date of accrual and whether the statute of limitations bars the claim of constructive fraud. The date when Montana Trucks was said to have "actual knowledge" of the FMVSS 121 noncompliance remains the critical inquiry here. UD America once again argues that the date of accrual was in May 2007 and Montana Trucks insists that it was February 1, 2010. As discussed above, the date of accrual could also be either July 2008 or October 2008, making

23

Montana Trucks' claim timely.

However, even if timely, the claim fails as a matter of law. Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App. 2004). Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). In the absence of a formal fiduciary duty, an informal fiduciary duty may arise from "a moral, social, domestic, or purely personal relationship of trust and confidence, generally called a confidential relationship." *Id.* at 331 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). However, "[i]n order to give full force to contracts, [courts] do not create such a relationship lightly." *Id.* (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)). The law recognizes the existence of confidential relationships in those cases "in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 287. To impose an informal fiduciary duty in a business transaction, the relationship "must exist prior to, and apart from, the agreement that is the basis of the suit." *Hubbard*, 138 S.W.3d at 483. In other words, there must be a preexisting special relationship of trust and confidence that is betrayed in later dealings. *Id.*

24

UD America argues that there was no fiduciary relationship, formal or informal, that existed between itself and Montana Trucks prior to entering into the Contract in December 2003. (Doc. 121 at 25.) However, Montana Trucks disagrees and claims that "[t]he special relationship induced Montana Trucks to contract with UD America over other distributors" and insists that "[t]o claim that no trust or personal/social relationship existed . . . defies common sense and business practices." (Doc. 127 at 23.) Arms-length transactions entered into for the parties' mutual benefit do not establish a basis for a fiduciary relationship. *Meyer*, 167 S.W.3d at 331. Thus, the Contract alone does not establish a basis for a fiduciary relationship. The record lacks any substantial evidence to support Montana Trucks' claims of a "preexisting special relationship," which is required by Texas law in order to impose an informal fiduciary duty and to establish a constructive fraud claim. Therefore, summary judgment is granted as to this claim as well.

## IV. Punitive Damages

An award of punitive damages is not a stand-alone cause of action. *Texas v. Republic Nat'l Bank of Dallas*, 460 S.W.2d 233, 244 (Tex. App. 1970). However, punitive damages can be brought in conjunction with an actionable claim for fraud. Tex. Civ. Prac. & Rem. Code § 41.003(a)(1). Once a plaintiff has proven

fraud by clear and convincing evidence, then liability for punitive damages is determined by the trier of fact. Tex. Civ. Prac. & Rem. Code § 41.003 (b),(d). Because Montana Trucks' claim for fraud may have merit and is not barred by the Texas statute of limitations, its punitive damages claim survives as well.

## CONCLUSION

The record shows that there are genuine disputes of material fact in this case as to the claims of fraud and breach of contract. Accordingly,

IT IS ORDERED that UD America's motion for summary judgment (Doc. 120) is DENIED in PART AND GRANTED in PART. It is DENIED as to Montana Trucks' claims for fraud and breach of contract. However, due to Montana Trucks' concession and the lack of fiduciary relationship, summary judgment is GRANTED as to the claims of negligent misrepresentation and constructive fraud.

Dated this 16 day of May, 2017.

Donald W. Molloy, District Judge
United States District Court